**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0052n.06

Case No. 18-3514

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jan 30, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAVID R. MADDOX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF A |
| | ) | DECISION AND ORDER OF THE |
| LODESTAR ENERGY, INC.; DIRECTOR, | ) | BENEFITS REVIEW BOARD, |
| OFFICE OF WORKERS' COMPENSATION | ) | UNITED STATES DEPARTMENT |
| PROGRAMS; UNITED STATES | ) | OF LABOR |
| DEPARTMENT OF LABOR; KENTUCKY | ) | |
| EMPLOYERS MUTUAL INSURANCE, | ) | |
| | ) | |
| Respondents. | ) | |

BEFORE: CLAY, COOK, and LARSEN, Circuit Judges.

COOK, Circuit Judge. David Maddox, claimant in this black-lung benefits case, received an award of benefits against his employer, Lodestar Energy, Inc. At each level of review in the Department of Labor, the adjudicators awarded fees to Maddox's attorney, Austin Vowels, under the fee-shifting provision of the Black Lung Benefits Act, 30 U.S.C. § 932(a). On petition for review before this court, Vowels argues that the adjudicators abused their discretion by approving certain hourly rates and billable hours in calculating the fee award. Finding discretion properly exercised here, we AFFIRM.

## I.

After the successful prosecution of his client's disability claim under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45, attorney Austin Vowels petitioned an administrative law judge ("ALJ") for fees and expenses totaling $12,455.49. The requested fee award represented 38 hours of Vowels's services billed at $250 an hour along with 16.30 hours of his paralegal's services billed at $150 an hour.

In his statement supporting the requested $250 hourly rate, Vowels listed his six years of experience representing black lung claimants, his customary billing rate between $150 and $250, and his prior awards at a $250 hourly rate in cases where his fee petition went unopposed. One of few attorneys representing claimants in Kentucky, Vowels explained that he requested a rate on the high end of the range because Maddox's case required complex and specialized legal and medical knowledge. Vowels also provided the ALJ with two fee surveys: one summarizing rates commanded by partners at law firms across the country and the other collecting rates for Kentucky attorneys practicing consumer law.

To support the $150 rate requested for his paralegal's services, Vowels relied on two prior fee awards in which the ALJ selected $100 and $150 as the appropriate hourly rates. Though the paralegal customarily billed at rates between $100 and $150 per hour, Vowels again pointed to the complexity of Maddox's claim as justification.

Lodestar objected to both of the hourly rates Vowels sought as excessive. It also challenged various billable-time entries that the company considered clerical, vague, or otherwise non-compensable.

After reviewing Vowels's fee petition and Lodestar's objections, the ALJ selected lower figures as reasonable hourly rates: $225 for Vowels and $100 for the paralegal. The ALJ found

that Vowels had not established that he was entitled to the full $250 hourly rate. She explained that neither the unopposed fee petitions nor the attorneys fee surveys submitted were "indicative of the appropriate prevailing rate" for comparable attorneys working in the relevant area of black lung claims. In selecting $225, the ALJ reasoned that, given Vowels's $200 rate in prior fee awards, an increase to $225 would account for inflation. The ALJ similarly assessed the appropriate paralegal hourly rate to be $100, as Vowels submitted no evidence establishing $150 as the prevailing market rate. As to the hours billed, the ALJ disallowed 1.95 of the 38 hours of Vowels's services and 0.90 of the 16.30 hours of paralegal services after finding the service performed clerical or the time requested excessive.

In all, the ALJ awarded fees totaling $9,651.25, compensating Vowels for 36.05 hours of work at a $225 rate and the paralegal for 15.40 hours at a $100 rate. The Benefits Review Board (BRB) affirmed the award, and Vowels appealed.

## II.

We review an administrative adjudicator's award of attorneys' fees, including the hourly rate selected and number of billable hours approved, for abuse of discretion. *B & G Mining, Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 661 (6th Cir. 2008). "An abuse of discretion exists when the [adjudicator] applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Id.* (alteration in original) (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007)).

In an attorneys' fees case, we primarily concern ourselves with the reasonableness of the award. An adjudicator must award a fee "reasonably commensurate with the necessary work done," 20 C.F.R. § 725.366(b), and adequately compensatory to attract competent representation,

*Gonter*, 510 F.3d at 616. To arrive at a reasonable fee, an adjudicator multiplies the number of hours spent on a case by a reasonable hourly rate. *B & G Mining,* 522 F.3d at 661–63.

### A. Reasonable Hourly Rate

An attorney's reasonable hourly rate is calculated according to "the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Id.* at 663 (quoting *Gonter*, 510 F.3d at 618). "The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Id.* Vowels, as the prevailing attorney seeking fees, has the burden of proving that the requested rates are in line with those prevailing in the community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Lance Coal Corp. v. Caudill*, 655 F. App'x 261, 262 (6th Cir. 2016).

Vowels argues that the adjudicators ignored his evidence of market rates, pointing to the ALJ's refusal to rely on previous awards he received at a $250 hourly rate as an abuse of discretion. True, "where there is only a relatively small number of comparable attorneys, like here, an adjudicator can look to prior awards for guidance in determining a prevailing market rate." *B & G Mining*, 522 F.3d at 664. But prior awards to Vowels at a $250 hourly rate "do not set the prevailing market rate—only the market can do that." *Id.* Thus, the adjudicators could consider the hourly rates underlying Vowels's prior fee awards as "some inferential evidence of what a market rate is" but maintained discretion to select a lower figure consistent with the prevailing market rate. *Id.*

Here, the adjudicators did not rely on clearly erroneous findings of fact, improperly apply the law, or use an erroneous legal standard. Instead, they considered the rates Vowels requested and found he produced insufficient evidence to support them. Vowels submitted two surveys of

billing rates, but neither presented evidence of comparable attorneys doing comparable work. The first survey, showing billing rates between $230 and $1,000 for law firm partners across the country, does not reflect the prevailing market rate for the venue of the court of record, i.e., the prevailing market rate in Kentucky. The second, a survey of rates awarded to Kentucky attorneys practicing consumer law, says nothing of the rate that attorneys handling black lung claims in Kentucky would reasonably expect to command. Moreover, "state-bar surveys of rates provide evidence of a market rate," but, like awards in earlier cases, do not set the rate themselves. *Id.* at 664. Thus, the adjudicators were within their discretion to set aside the two surveys Vowels submitted. The same goes for the unpublished BRB decisions Vowels cited, which considered the prevailing market rate for attorneys who had practiced for at least thirty more years than Vowels. They simply were not relevant to the prevailing market rate inquiry.

Vowels presents the same arguments in his challenge to the adjudicators' reduction of the paralegal's hourly rate. Vowels once again submitted his prior unopposed fee awards showing a $150 hourly rate for his paralegal. But, as explained, an administrative adjudicator does not abuse her discretion in declining to give controlling weight to unopposed prior fee awards. Vowels's other evidence about the paralegal's credentials likewise does not reflect the market for paralegal services and therefore cannot establish $150 as the prevailing rate. Because Vowels produced insufficient evidence to support an hourly rate of $150 for his paralegal, the adjudicators acted within their discretion when they reduced the paralegal's hourly rate to $100.

### B. Allowable Hours

To arrive at an award "reasonably commensurate with the necessary work done," 20 C.F.R. § 725.366(b), agency adjudicators must review for and exclude "excessive, redundant, or otherwise unnecessary" time entries. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Our review

for abuse of discretion affords the ALJ and the BRB considerable deference in deciding whether hours represented in a fee petition are excessive. *See B & G Mining*, 522 F.3d at 666–67; *see also Zeigler Coal Co. v. Dir., Office of Workers' Comp. Programs*, 326 F.3d 894, 902–903 (7th Cir. 2003). "As long as the total number of billable hours is reasonable in relation to the work performed" and the adjudicators' decision is supported by the record, the award should be affirmed. *B & G Mining*, 522 F.3d at 666.

Vowels contends that the ALJ arbitrarily reduced or disallowed billable time entries that she deemed clerical, excessive, or otherwise non-compensable. In fact, the ALJ and BRB conducted thorough reviews and reached conclusions well supported by the record that certain tasks at issue were clerical. For example, the ALJ reviewed each challenged billing entry on an individual basis and reduced the time entries in the few instances where the task descriptions revealed their clerical nature by mentioning invoices and transcript orders. Because the record shows the adjudicators carefully reviewed Vowels's submission and because they are "in a much better position than the appellate court to make this determination," *Zeigler Coal*, 326 F.3d at 903, we find no abuse of discretion in the hours awarded.

### III.

We give considerable deference to the fees awarded by administrative adjudicators, lest a request for attorneys' fees "metastasize into 'a second major litigation.'" *B & G Mining*, 522 F.3d at 666 (quoting *Hensley*, 461 U.S. at 437)). In view of this deferential standard, we discern no abuse of discretion in the fees awarded by the ALJ or BRB. We AFFIRM.